UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-281-GWU

KAREN HARGIS,                                                              PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                         DEFENDANT.

**INTRODUCTION**

The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Disability Insurance Benefits (DIB).  The appeal is

currently before the Court on cross-motions for summary judgment.

**APPLICABLE LAW**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.   Is the claimant currently engaged in substantial gainful activity?
     If yes, the claimant is not disabled.  If no, proceed to Step 2.
     See 20 C.F.R. 404.1520(b), 416.920(b).

2.   Does the claimant have any medically determinable physical
     or mental impairment(s)?  If yes, proceed to Step 3.  If no, the
     claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.   Does the claimant have any severe impairment(s)--i.e., any
     impairment(s) significantly limiting the claimant's physical or
     mental ability to do basic work activities?  If yes, proceed to
     Step 4.  If no, the claimant is not disabled.  See 20 C.F.R.
     404.1520(c), 404.1521, 416.920(c), 461.921.

1

Hargis

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled.  If no, proceed to Step 6.   See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?   If yes, the claimant was not disabled.   If no, proceed to Step 7.   See 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?   If yes, the claimant is not disabled.   See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

        Applying this analysis, it must be remembered that the principles pertinent

to the judicial review of administrative agency action apply.   Review of the

Commissioner's decision is limited in scope to determining whether the findings of

fact made are supported by substantial evidence.  Jones v. Secretary of Health and

Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

Hargis

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. Section 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1)

3

Hargis

whether objective medical evidence confirms the severity of the alleged
pain arising from the condition; or (2) whether the objectively
established medical condition is of such a severity that it can
reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.
1986).

Another issue concerns the effect of proof that an impairment may be
remedied by treatment.  The Sixth Circuit has held that such an impairment will not
serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health
and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same
result does not follow if the record is devoid of any evidence that the plaintiff would
have regained his residual capacity for work if he had followed his doctor's
instructions to do something or if the instructions were merely recommendations.
Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,
1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before
it, despite the plaintiff's claims that he was unable to afford extensive medical work-
ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.
1987).  Further, a failure to seek treatment for a period of time may be a factor to be
considered against the plaintiff, Hale v. Secretary of Health and Human Services,
816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Hargis

or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  <u>Id</u>. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  <u>E.g., Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency

6

Hargis

may be required to consult a vocational specialist.  <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Karen Hargis, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of fibromyalgia and a mood disorder.  (Tr. 15).  Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mrs. Hargis retained residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 17-18).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether the plaintiff, a 50-year-old individual with a high school education and semiskilled work experience (Tr. 306, 315-16), could perform any jobs if she were capable of "medium" level exertion, and also had the following nonexertional restrictions (Tr. 316).  She: (1) could not climb; (2) could occasionally stoop and bend; and (3) had a "limited but satisfactory" ability to maintain attention and concentration and deal with work

7

Hargis

stresses.  (Id.).  The VE responded that there were jobs that such a person could perform and proceeded to give the numbers in which they existed in the state and national economies.  (Id.).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff alleged disability due to fibromyalgia, rheumatoid arthritis, diabetes, depression, confusion, a mood disorder, and "consistent" pain.  (Tr. 76). She testified that she had stopped working in November, 2003, due to a combination of these problems, and had recently been given oxygen to help with her problems of insomnia.  (Tr. 307, 309).  She appeared to indicate that her diabetes was controlled (Tr. 310), but felt unable to work because of pain and stiffness as well as depression, although she was able to engage in some outside activities such as intermittent church attendance and having some visitors.  (Tr. 309-12).

The plaintiff's treating psychiatrist, Dr. Syed Umar, submitted office notes beginning January, 2004, indicating that the plaintiff had been referred by her family physician for depression.  (Tr. 191).  She described poor concentration, loneliness, fatigue, and poor sleep, among other problems.  (Id.).  Her mood was depressed and her affect was tearful. (Tr. 193).  Dr. Umar diagnosed a major depressive disorder, recurrent, with a Global Assessment of Functioning (GAF) score of 40.  (Id.).  A GAF score of 40 reflects either some impairment in reality testing or communication, or

Hargis

major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood.  Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision) (DSM-IV-TR), p. 34.   The psychiatrist prescribed medications including Zoloft, Ambien, and Ativan; the next month, her medications included Seroquel and Klonopin.  (Tr. 190-3).  By May, 2004, the GAF was given as "40-50," and Mrs. Hargis was said to have made mild to moderate progress.  (Tr. 187).  The GAF was given as 50 in July, 2004, with an indication of "moderate" progress.  (Tr. 185).  A GAF of 50 reflects serious symptoms, or any serious impairment in social, occupational, or school functioning. DSM-IV-TR, p. 34. However, Mrs. Hargis was said to be "more depressed" in October, 2004, and the GAF was again given as "40-50."  (Tr. 182).  Her medications included Wellbutrin, Klonopin, Zoloft and Vistaril.  The most recent office note was dated November 17, 2004, and Dr. Umar gave a GAF of 50, indicated the plaintiff was making moderate progress, and decreased the dosage of Zoloft.  (Tr. 181).

Dr. Umar wrote a letter dated November 29, 2005, stating that Mrs. Hargis had been his patient since January of 2004, and had been diagnosed with recurrent major depressive disorder.  (Tr. 254).  She was having problems with motivation, insomnia, confusion, poor concentration, and "on and off memory lapses" probably caused by depression.  The psychiatrist opined that she was "unable to perform persistent tasks for long periods of time," and sometimes even had difficulty

9

Hargis

maintaining hygiene.  He added that brief periods of improvement had been seen, but did not last long.  (Id.).

The ALJ discussed Dr. Umar's office notes without any mention of the extremely low GAF scores, and discussed his letter in passing, saying nothing about the limitations on performing tasks or in maintaining hygiene, stating only that "Dr. Umar's opinion of no lasting improvement in the claimant's condition is not supported by his own treatment records and is given little weight."  (Tr. 17).  The ALJ gave significant weight to the opinions of state agency psychologists. (Id.).  However, the state agency psychologists had reviewed only a portion of the record, and, likewise, did not discuss the GAF scores.  Dr. Ed Ross completed his mental residual functional capacity assessment form on July 26, 2004, before all Dr. Umar's records could have been submitted, and in December, 2004 Dr. Lea Perritt affirmed Dr. Ross's opinion without comment.  (Tr. 203-5, 222-4).  Neither had the opportunity to review Dr. Umar's November, 2005 letter.

While the opinion of a non-examining source may be accepted over that of an examiner, the non-examiner must have had the opportunity to review the entire record, and explain why his opinion differs from that of the examiner.  Barker v. Shalala, 40 F. 3rd 789, 794 (6th Cir. 1994). The opinions of the non-examining sources do not meet this criteria. Moreover, while the GAF scores given by the psychiatrist may not precisely equate to functional restrictions by themselves, they

10

are far more consistent with the plaintiff's testimony than implied by the summary of the evidence given in the hearing decision.

The plaintiff challenges the ALJ's determination that her allegations were not totally credible, particularly regarding her complaints of pain.  One of the reasons given for discounting her allegations was the ALJ's conclusion that the plaintiff was only on a small dose of Flexeril, a muscle relaxant.  (Tr. 16).  The evidence indicates that, although Dr. Goldfarb, the rheumatologist, was indeed prescribing Flexeril, he was also prescribing the medication Salsalate (Tr. 87, 90).  Her treating family physician was also trying an array of medications, including Zanaflex and, at one point, four Lorcet Plus tablets per day. (Tr. 91, 102, 105). Therefore, the implication that Mrs. Hargis was on only a low dose of Flexeril and her pain could not have been serious is questionable. Moreover, the ALJ apparently gave no consideration to a third party function report completed by Mrs. Hargis's neighbor, who reported that the plaintiff was limited in her daily activities, unable to do more than light housework, and frequently missed social activities such as church because of pain (Tr. 51-9), and a report from the plaintiff's former employer that she had missed work due to physical problems, and was very slow in getting in and out of her meter reading vehicle and moving about because of fibromyalgia (Tr. 68).  The employer also reported that after Mrs. Hargis left work she became "more socially isolated, 'a recluse' due to depression."  (Id.).  The Sixth Circuit has held that lay testimony

Hargis

joined with medical evidence may establish disabling pain, and that failure to consider the record as a whole undermines the Commissioner's conclusions. <u>Hurst v. Secretary of Health and Human Services</u>, 753 F.2d 517, 519 (6th Cir. 1985).

Accordingly, for the reasons given above, the court concludes that the ALJ's decision to deny benefits was without substantial justification due to selective consideration of the evidence. <u>See</u> <u>Howard v. Barnhart</u>, 376 F.3d 551, 554 (6th Cir. 2004). A remand will be required for further consideration of these points.

The plaintiff makes an additional argument on appeal, pointing to the fact that her treating family physician, Dr. Anjum Iqbal, who had submitted treatment notes covering a period from January, 2000 to October, 2004 (Tr. 100-79), wrote a note on his prescription pad dated November 16, 2005 stating that the plaintiff suffered from fibromyalgia, major depression, hypertension, diabetes mellitus "diet controlled," and irritable bowel syndrome. The physician opined that Mrs. Hargis was "totally disabled from holding any gainful employment." (Tr. 255).

The ALJ rejected Dr. Iqbal's opinion because he felt it was not supported by objective medical evidence, and because "the issue of disability is a finding of fact reserved to the Commissioner." (Tr. 16). Whatever may be said about the evidence regarding the plaintiff's physical condition, Dr. Iqbal's statement was a vocational

Hargis

conclusion outside his area of expertise. Consequently, this argument is without merit. [1]

The plaintiff has also submitted additional evidence to the Appeals Council, and while it cannot form a basis for the court's substantial evidence review, it can be considered along with other new evidence on remand.

The decision will be remanded for further consideration.

This the 18th day of April, 2007.



**Signed By:**

**G. Wix Unthank**

**United States Senior Judge**

---

[1]  No treating or examining source identified any specific limitations.  The plaintiff's treating rheumatologist, Dr. Paul Goldfarb, diagnosed osteoarthritis and fibromyalgia, but declined to make a declaration about the plaintiff's ability to work, stating that in his opinion, fibromyalgia was "not a disabling condition," and Mrs. Hargis needed further evaluation of her arthritis.  (Tr. 93).  Laboratory testing did reveal an elevated sedimentation rate.  (Tr. 98).  Dr. Goldfarb did not suggest any specific functional restrictions in his subsequent notes, however.  (Tr. 86 -- 90).    The only opinions on physical limitations came from state agency reviewing sources, who opined that Mrs. Hargis was capable of "medium" level exertion, occasional crawling and climbing of ladders, ropes, and scaffolds, and a need to avoid concentrated exposure to vibration. (Tr. 195 -- 202, 241 -- 8).  While the hypothetical question did not contain a reference to avoiding vibration, the Dictionary of Occupational Titles (DOT) indicates that the "medium" level jobs of machine tender, Section 524-685-010, and hand packager, Section 920-587-018, do not involve exposure to vibration.